**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

     Plaintiff,

vs.

                                              No. CR 17-1371 JB

BRUCE SEDILLO; LOREN SABAQUIE,
and ROBERT GALLARDO,

     Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Motion to Continue the Restitution Hearing, filed December 11, 2018 (Doc. 152)("Motion"). The Court held a hearing on this matter on December 12, 2018. The primary issue is whether, pursuant to Dolan v. United States, 560 U.S. 605 (2010), the Court may continue the hearing to determine the restitution owed a victim of the Defendants Bruce Sedillo, Loren Sabaquie, and Robert Gallardo's Verizon Wireless Robbery until after 18 U.S.C. § 3664(d)(5)'s ninety-days-after-sentencing deadline for restitution determinations. The Court concludes that, pursuant to Dolan v. United States, it may determine the restitution amount outside the ninety days after Sedillo's, Sabaquie's, and Gallardo's sentencings, and, thus, the Court will grant the Motion in part until December 19, 2018. At that time, the Court will determine whether to order restitution and whether to continue the determination of the restitution amount for sixty days.

## FACTUAL BACKGROUND

The Court takes its facts from the Presentence Investigation Report, filed July 27, 2018 (Doc. 98)("Sabaquie PSR"); the Presentence Investigation Report, filed July 23, 2018

(Doc. 96)("Gallardo PSR"); and the Presentence Investigation Report, filed July 10, 2018 (Doc. 95)("Sedillo PSR"). The Court provides these facts for background.

On January 16, 2017, Gallardo and Sedillo entered a Metro PCS store with a "chrome pistol with an extended magazine" and stole "iphones, Sound Bands,[1] SD cards[2] and an unknown amount of cash." Sabaquie PSR ¶ 10, at 5; Gallardo PSR ¶ 11, at 5; Sedillo PSR ¶ 11, at 5 (quotations identical in the Sabaquie PSR, the Gallardo PSR, and the Sedillo PSR). On January 21, 2017, Sedillo and Sabaquie took "cigarettes, beer, and an unknown amount of cash" from a 7-Eleven and "fled in a Scion[3] style 'box car.'" Sabaquie PSR ¶12, at 5; Gallardo PSR ¶ 13, at 5; Sedillo PSR ¶ 13, at 5 (quotations identical in the Sabaquie PSR, the Gallardo PSR, and the Sedillo PSR). On January 25, 2017, Sedillo, with two men not indicted as co-Defendants, robbed a Wienerschnitzel and fled in a "red box style vehicle." Sabaquie PSR ¶ 13, at 5; Gallardo PSR ¶ 14, at 5; Sedillo PSR ¶ 14, at 5 (quotation identical in the Sabaquie PSR, the Gallardo PSR, and the Sedillo PSR). On January 26, 2017, Sedillo, Sabaquie, Gallardo, and a fourth, unidentified

---

[1]The Court assumes that "Sound Bands" refers to a type of headphone. Sabaquie PSR ¶ 10, at 5; Gallardo PSR ¶ 11, at 5; Sedillo PSR ¶ 11, at 5 (quotation identical in the Sabaquie PSR, the Gallardo PSR, and the Sedillo PSR). See Gadget Review, http://www.gadgetreview.com/sound-band-headphones (last visited Dec. 17, 2018).

[2]An SD card, or secure digital card, "is a non-volatile memory card," an electronic device used for storing and retrieving digital data without powering off the device. Secure Digital, Wikipedia, https://en.wikipedia.org/wiki/Secure_Digital (last visited Dec. 17, 2018). See Non-Volatile, Wikipedia, https://en.wikipedia.org/wiki/Non-volatile_memory (last visited Dec. 17, 2018); Flash Memory, Wikipedia, https://en.wikipedia.org/wiki/Flash_memory (last visited Dec. 17, 2018). SD cards meet standards developed by the SD Association. See Secure Digital, supra; SD Association, Wikipedia, https://en.wikipedia.org/wiki/SD_Association (last visited Dec. 17, 2018).

[3]Scions are a type of car manufactured by Toyota. Scion (automobile), Wikipedia, https://en.wikipedia.org/wiki/Scion_(automobile) (last visited Dec. 17, 2018). Toyota began manufacturing the cars in 2003. See Scion (automobile), supra.

man, robbed the same Metro PCS store previously robbed on January 16, 2017.  See Sabaquie PSR ¶ 14, at 5-6; Gallardo PSR ¶ 15, at 5-6; Sedillo PSR ¶ 15, at 5-6.  On February 2, 2017, while detectives were conducting surveillance at a Verizon Wireless store, Sedillo, Sabaquie, Gallardo, and a fourth, unindicted man, entered the store with two handguns.  See Sabaquie PSR ¶ 16, at 6; Gallardo PSR ¶ 17, at 6; Sedillo PSR ¶ 17, at 6.  The two men armed with handguns "demanded cash and cellphones, demanding that the employees lay down on their faces.  One of the males put a handgun to one of the employees head and forced him to the back area of the store and had him open the safe."  Sabaquie PSR ¶ 19, at 7; Gallardo PSR ¶ 20, at 7; Sedillo PSR ¶ 20, at 7 (quotation identical in the Sabaquie PSR, the Gallardo PSR, and the Sedillo PSR).  Sedillo, Sabaquie, and Gallardo left the store with "$5,260 in cash," and "smart phones and tablets."  Sabaquie PSR ¶ 19, at 7; Gallardo PSR ¶ 20, at 7; Sedillo PSR ¶ 20, at 7 (quotations identical in the Sabaquie PSR, the Gallardo PSR, and the Sedillo PSR).  Sedillo, Sabaquie, and Gallardo's vehicle fled the Albuquerque Police Department officers ("APD officers") at "a high rate of speed," and turned into a neighborhood.  Sabaquie PSR ¶ 16, at 6; Gallardo PSR ¶ 17, at 6; Sedillo PSR ¶ 17, at 6 (quotation identical in the Sabaquie PSR, the Gallardo PSR, and the Sedillo PSR).  When the APD officers located the vehicle, a "red Scion XB," the APD officers uncovered "an open bag full of box Verizon cellphones, shoes, and other clothing items associated with the robbery."  Sabaquie PSR ¶¶ 16-17, at 6; Gallardo PSR ¶¶ 17-18, at 6; Sedillo PSR ¶¶ 17-18, at 6 (quotations identical in the Sabaquie PSR, the Gallardo PSR, and the Sedillo PSR).  The APD officers located Sabaquie and Gallardo in the area.  See Sabaquie PSR ¶¶ 17-18, at 6-7; Gallardo PSR ¶¶ 18-19, at 6-7; Sedillo PSR ¶¶ 18-19, at 6-7.

Since the Verizon Wireless robbery, M.D., an employee in the Verizon Wireless store at the time of the robbery, has ceased work at Verizon Wireless, and struggles to enter the community, crowded areas, or Verizon stores. <u>See</u> Second Addendum to the Presentence Report as to Robert Gallardo at 1, filed September 18, 2018 (Doc. 119); Second Addendum to the Presentence Report as to Bruce Sedillo at 1, filed September 18, 2018 (Doc. 120); Second Addendum to the Presentence Report as to Loren Sabaquie at 1, filed September 18, 2018 (Doc. 121)(collectively, "Second Addendum"). Before the Verizon Wireless robbery, M.D. had worked forty-hour weeks and earned twenty-eight dollars per hour. <u>See</u> Second Addendum at 1. Immediately after the robbery, Verizon Wireless supported M.D., but Verizon Wireless has stopped such payments until M.D. provides further information from his psychiatrist; M.D. is seeking to recover his lost wages. <u>See</u> Second Addendum at 1. M.D.'s psychiatrist at the University of New Mexico Hospital ("UNMH"), Dr. Mario Cruz, has diagnosed M.D. with post-traumatic stress disorder ("PTSD"), and M.D. started medication in July, 2018, after three months of therapy. <u>See</u> Second Addendum at 1. Dr. Cruz has M.D. restricting his work, but M.D. believes that his position at Verizon Wireless will be secure. <u>See</u> Second Addendum at 1. M.D., however, "is now behind on paying his child support and has been receiving food stamps." Second Addendum at 1. M.D. and his girlfriend must live on one salary, and M.D. is unsure if he will receive bills from UNMH. <u>See</u> Second Addendum at 1.

## PROCEDURAL BACKGROUND

A federal Grand Jury returned a five-count indictment. <u>See</u> Superseding Indictment, filed June 28, 2017 (Doc. 22). In Count 1, the Grand Jury indicts Sedillo and Gallardo for unlawfully obstructing, delaying, and affecting commerce, in violation of 18 U.S.C. § 1951(a) and 18 U.S.C.

§ 2, by taking, through threats with a firearm, cash from Metro PCS employees. <u>See</u> Superseding Indictment at 1. In Count 2, the Grand Jury indicts Sedillo and Sabaquie for violating the same United States Code provisions by similarly taking, through threats with a firearm, cash from the 7-Eleven. <u>See</u> Superseding Indictment at 1-2. In Count 3, the Grand Jury indicts Sedillo for engaging in the same conduct and violating the same United States Code provisions at a Weinerschnitzel. <u>See</u> Superseding Indictment at 2. Count 4 and Count 5 state charges against Sedillo, Sabaquie, and Gallardo for the same conduct and in violation of the same United States Code provisions at, respectively, a Metro PCS and a Verizon Wireless. <u>See</u> Superseding Indictment at 2-3. Sedillo, Sabaquie, and Gallardo each pled guilty to Count 5, which contained the charges for the Verizon Wireless robbery. <u>See</u> Sabaquie PSR ¶ 2, at 4; Gallardo PSR ¶ 2, at 4; Sedillo PSR ¶ 2, at 4. The Sedillo PSR, the Sabaquie PSR, and the Gallardo PSR indicated that the Mandatory Victims Restitution Act of 1996, 18 U.S.C. § 3663A ("MVRA"), applies to Sedillo's, Sabaquie's, and Gallardo's crime and that, although the United States Probation Office ("USPO") sent "victim packets" to the Verizon Wireless, the USPO has not received information from any victim. Sabaquie PSR ¶ 26, at 8; Gallardo PSR ¶ 27, at 8; Sedillo PSR ¶ 27, at 8 (quotation identical in the Sabaquie PSR, the Gallardo PSR, and the Sedillo PSR).

**1.      The Second Addendum.**

On September 18, 2018 (Doc. 119), the USPO filed the Second Addendums to the Presentence Reports for Sedillo, Sabaquie, and Gallardo. <u>See</u> Second Addendum. In the Second Addendum, the USPO explains that it "received a phone call and interviewed the victim, M.D.," who described his hardships since the Verizon Wireless robbery. Second Addendum at 1. The Court recites the hardships in the Factual Background. The USPO states that M.D. has not

provided it with documentation recording his lost wages and that M.D. "may come to the sentencing hearing but will not address the Court." Second Addendum at 1. The USPO assures the Court that, if it receives further information from M.D. or other victims, it will update the Court. See Second Addendum at 1.

### 2. **The Sentencing Hearings.**

The Court held Sabaquie's sentencing hearing first, on September 20, 2018. See Clerk's Minutes, filed September 20, 2018 (Doc. 124). At the hearing, Plaintiff United States of America explained that it has "had a difficult time communicating with some of the . . . witnesses[,] because they've left their employment and so forth." Draft Transcript of Hearing at 39:5-7 (taken September 20, 2018)(Torrez)("Sabaquie Tr.").[4] The United States reiterated the facts recounted in the Second Addendum, see Sabaquie Tr. at 39:15-20 (Torrez), and, given these facts, asked the Court to "keep the matter of restitution open for 90 days under the statute with respect to Mr. Sabaquie," Sabaquie Tr. at 39:20-22 (Torrez). The United States noted that remembering that armed robberies impact individuals' and communities' safety is important. See Sabaquie Tr. at 39:22-25 (Torrez). In response to the Court's question, the USPO indicated that, by the sentencing hearing, it had not been able to obtain information from the victims for restitution. See Sabaquie Tr. at 51:6-14 (Court, Probation Officer). The Court stated, accordingly, that it would not order restitution, as the victims had not made a claim. See Sabaquie Tr. at 51:15-20 (Court). The United States responded by noting that 18 U.S.C. § 3664(d)(5) provides ninety days after sentencing to

---

[4]The Court's citations to the transcripts of the hearings cited in the text, the Draft Transcript of Hearing (taken October 3, 2018), the Draft Transcript of Hearing (taken October 10, 2018), and the Draft Transcript of Hearing (taken December 17, 2018), refer to the court reporter's original, unedited versions. Any final transcripts may contain slightly different page and/or line numbers.

address restitution under the MVRA and stated that it would seek further information on the matter. See Sabaquie Tr. at 52:20-25 (Torrez). The Court explained that, to postpone addressing restitution, it needed representations from the United States or the USPO that a restitution amount could not be determined through their "reasonable efforts" ten days before the sentencing hearing. Sabaquie Tr. at 53:3 (Court). See id. at 53:1-6 (Court); id. at 55:3-10 (Court). Sabaquie contended that he could not determine whether the United States and the USPO required additional time to obtain information on restitution, what had delayed M.D. in providing information on restitution, or whether M.D. could overcome the obstacle within the ninety days. See Sabaquie Tr. at 53:19-25 (Fernandez). The Court read from 18 U.S.C. § 3664(d), stating that the victim's losses must be unascertainable by ten days before sentencing for the Court to postpone determining restitution ninety days after sentencing and asked whether the USPO could make this representation. See Sabaquie Tr. at 55:3-10 (Court). The United States replied that it had made efforts to obtain such information and that the victim intended to submit information on restitution, see Sabaquie Tr. at 53:7-12 (Torrez), and the USPO affirmed that it could not have determined the restitution amount by ten days before sentencing. See Sabaquie Tr. at 55:11-12 (Probation Officer). The Court indicated that it would have a restitution hearing "no more than 90 days" from the sentencing hearing. See Sabaquie Tr. at 55:13-14 (Court). According to the Court, if, at that time, the victim produces no information, the Court will not order restitution, but if the victim does produce information, Sabaquie can look at the information and consider whether the United States and the USPO could have learned it earlier. See Sabaquie Tr. at 55:15-24 (Court). The Court noted that, if M.D. did not cooperate with the United States or the USPO, the United States and the USPO would struggle to get the information. See Sabaquie Tr. at 55:25-55:8 (Court). The Court

indicated that the USPO had made multiple efforts to get the information, so the USPO at least could make representations that it had tried to obtain the information. See Sabaquie Tr. at 56:2-8 (Court); id. at 56:12-15 (Court). The United States replied that it did not get any information about possible restitution until it received the addendum about medical costs. See Sabaquie Tr. at 56:9-11 (Torrez).

The Court held Gallardo's sentencing hearing on October 3, 2018. See Clerk's Minutes, filed October 3, 2018 (Doc. 133). The United States reiterated that it was seeking restitution for M.D. See Draft Transcript of Hearing at 25:1-2 (taken October 3, 2018)(Torrez)("Gallardo Tr."). The Court initially noted that it would not impose restitution, as M.D. had not made a claim. Gallardo Tr. at 31:22-32:2 (Court). The United States requested that the Court "hold the matter of restitution open" for ninety days as it did in Sabaquie's sentencing hearing. Gallardo Tr. at 32:25-33:3 (Torrez). The Court asked whether the USPO could have reasonably determined a restitution amount and whether M.D. had submitted information for a restitution claim, and the USPO indicated that the victim expressed "some interest in wanting" a restitution claim but had not submitted information. Gallardo Tr. at 33:9-10 (Probation Officer). See Gallardo Tr. at 33:4-14 (Court, Probation Officer). The Court indicated that it would set a hearing on restitution within ninety days of the hearing and for the same time as Sabaquie's hearing on restitution. See Gallardo Tr. at 33:16-22 (Court).

The Court held Sedillo's sentencing hearing on October 10, 2018. See Clerk's Minutes, filed October 10, 2018 (Doc. 140). The United States requested that the Court "hold [the] matter of restitution open for the remainder of time that remains as we did with the other co-defendants." Draft Transcript of Hearing at 21:11-13 (taken October 10, 2018)(Torrez)("Sedillo Tr."). The

Court asked whether the USPO could determine restitution ten days before the sentencing hearing, and the USPO responded that it had contacted M.D., but that M.D. had not provided documentation about restitution. See Sedillo Tr. at 21:14-21 (Court, Probation Officer). The Court indicated that it would set a hearing in Sedillo's, Sabaquie's, and Gallardo's cases within ninety days, and that, if by that date, M.D. provides figures for restitution, the Court will determine whether to order restitution. See Sedillo Tr. at 21:22-22:7 (Court).

On October 10, 2018, the Court scheduled a restitution hearing for December 12, 2018. See Notice of Hearing, filed October 10, 2018 (Doc. 142). December 12, 2018, is eighty-three days after Sabaquie's September 20, 2018, hearing.

**3.** **The Motion.**

The United States filed the Motion, arguing that the Court grant it "an additional 60 days to obtain" and review medical billing records. Motion at 1. The United States explains that it "has made several attempts to obtain the information necessary to inform the Court of what the restitution should be," and that the United States has met with and communicated with M.D. and attempted to obtain his medical billing records. Motion at 1. The United States states that it has not received the medical billing records and that it requires those records to "determine future medical costs and past medical costs." Motion at 1. The United States notes that Gallardo does not object to the continuance but neither Sedillo nor Sabaquie have responded to the Motion. See Motion at 1-2.

**4.** **The Status Hearing.**

Because Gallardo was not present in the courtroom but remained in custody outside the state of New Mexico, the Court began the hearing by inquiring whether the hearing could proceed

without Gallardo's presence.   <u>See</u> Draft Transcript of Hearing 3:7-21 (taken December 17, 2018)(Herrera, Court)("Restitution Hearing Tr.").   The Court clarified that, although close to ninety days had passed since Sabaquie's sentencing hearing, the Court had reached only the middle of the ninety days since Gallardo's sentencing hearings.   <u>See</u> Restitution Hearing Tr. at 3:16-21 (Court).   Gallardo indicated concerns with proceeding with the Restitution Hearing, because the United States had noted that they did not have the documents necessary to establish a restitution amount and, according to Gallardo, without that, the parties could not meaningfully discuss the restitution amount.   <u>See</u> Restitution Hearing Tr. at 3:22-4:7 (Herrera).   The Court noted that it would prefer to proceed with the Restitution Hearing when Gallardo will be present and that the United States has the responsibility for ensuring the Defendants' presence in the courtroom.   <u>See</u> Restitution Hearing Tr. at 4:8-14 (Court).

The United States indicated that it had received some information, including medical records, from M.D. but that M.D. had not yet provided the United States his medical billing records.   <u>See</u> Restitution Hearing Tr. at 4:15-22 (Torrez).   The United States requested, accordingly, another sixty days to obtain the information for restitution, including medical billing records, tax records, and information about M.D.'s lost wages.   <u>See</u> Restitution Hearing Tr. at 4:22-5:3 (Torrez).   The Court asked under what authority it could grant the United States sixty days to obtain such information, and the United States cited <u>Dolan v. United States</u>, 571 F.3d 1022 (10th Cir. 2009).   <u>See</u> Restitution Hearing Tr. at 5:4-10 (Court, Torrez).   The United States argued that <u>Dolan v. United States</u> stands for the proposition that a court has authority to make a restitution determination after the ninety-day deadline if the court indicates "prior to the deadline" that it will order restitution and leaves "open for more than 90 days only the amount."   Restitution Hearing

Tr. at 6:10-17 (Torrez). Torrez requested that, given this case, the Court order restitution "without a final amount" and give the United States sixty days to determine the restitution amount. See Restitution Hearing Tr. at 6:18-22 (Torrez). The Court indicated that the Supreme Court of the United States affirmed Dolan v. United States in United States v. Dolan, 560 U.S. 605 (2010), but that the Supreme Court adopted a narrower analysis than the Court of Appeals for the Tenth Circuit. See Restitution Hearing Tr. at 6:5-9 (Court).

The Court expressed concern about ordering restitution without Gallardo's presence and asked for Gallardo's opinion about ordering restitution at the Restitution Hearing and determining the restitution amount later when Gallardo was present. See Restitution Hearing Tr. at 6:23-7:5 (Court). Gallardo expressed concern about the Court ordering restitution, because the United States had not provided even medical billing records from which to determine the restitution amount's size. See Restitution Hearing Tr. at 7:6-15 (Herrera). The United States explained that M.D.'s PTSD might be causing the difficulties in obtaining M.D.'s responses and that the United States had had similar problems working previously with "an individual that suffered a disability," Restitution Hearing Tr. at 8:8 (Torrez); according to the United States, with the previous victim, the United States required a year to obtain the desired information. See Tr. at 8:3-13 (Torrez). The United States offered that it could subpoena the medical billing records and provide M.D. for cross-examination. See Restitution Hearing Tr. at 8:13-18 (Torrez). The Court offered to set a hearing on December 19, 2018, the ninetieth day after Sabaquie's sentencing, to further consider the issue. See Restitution Hearing Tr. at 8:22-25 (Court). Sabaquie acquiesced to this plan with the condition that, before the hearing, the United States provide any documents it obtained. See Restitution Hearing Tr. at 9:15-20 (Fernandez). In response to the Court's question whether the

United States agreed to this request, the United States agreed to provide Sedillo, Sabaquie, and Gallardo any documents recovered before the hearing.  See Restitution Hearing Tr. at 10:22-25 (Court, Torrez).  The Court noted that Gallardo should be present in the courtroom for the December 19, 2018, hearing.  See Restitution Hearing Tr. at 12:3-5 (Court).  The United States offered that, if it could obtain the medical billing records it would try to arrive at a restitution amount before December 19, 2018, and the Court replied that, if the United States read Dolan v. United States correctly and the Court could permissibly follow the two-step process of ordering restitution before the ninety-day deadline and determining the restitution amount after the ninety-day deadline, the Court would order restitution on December 19, 2018, and grant the United States another sixty days to determine the restitution amount.  See Restitution Hearing Tr. at 13:9-23 (Torrez, Court).

## LAW REGARDING RESTITUTION

Courts do not have inherent power to order restitution, but may do so only when a statute so authorizes.  See United States v. Harwood, 854 F. Supp. 2d 1035, 1051 (D.N.M. 2012)(Browning, J.)(citing United States v. Gordon, 480 F.3d 1205, 1210 (10th Cir. 2007)).  The MVRA, 18 U.S.C. § 3663A, is a general act establishing a court's authority to order restitution. See 3 C. Wright, A. Leipold, P. Henning, & S. Welling, Federal Practice & Procedure: Criminal § 546, at 241 (4th ed 2011)("3 C. Wright").  In the Tenth Circuit, restitution is not criminal punishment, but is based "in the field of compensation and remediation."  United States v. Serawop, 505 F.3d 1112, 1123 (10th Cir. 2007)(acknowledging that other Courts of Appeals treat criminal restitution as a criminal penalty).

In 1996, Congress enacted the MVRA, which made restitution mandatory in certain cases, "particularly crimes of violence and theft crimes with identifiable victims who 'suffered a physical injury or pecuniary loss.'" United States v. Serawop, 505 F.3d at 1117 (quoting 18 U.S.C. § 3663A(c)(1)). The MVRA applies:

> **(c)(1)** . . . in all sentencing proceedings for convictions of, or plea agreements relating to charges for, any offense --
>
> > **(A)** that is --
> >
> > > **(i)** a crime of violence, as defined in section 16;
> > >
> > > **(ii)** an offense against property under this title, or under section 416(a) of the Controlled Substances Act (21 U.S.C. 856(a)), including any offense committed by fraud or deceit;
> > >
> > > **(iii)** an offense described in section 1365 (relating to tampering with consumer products); or
> > >
> > > **(iv)** an offense under section 670 (relating to theft of medical products); and
> >
> > **(B)** in which an identifiable victim or victims has suffered a physical injury or pecuniary loss.
>
> **(2)** In the case of a plea agreement that does not result in a conviction for an offense described in paragraph (1), this section shall apply only if the plea specifically states that an offense listed under such paragraph gave rise to the plea agreement.

18 U.S.C. § 3663A(c)(1).

The MVRA envisions that, if the district court determines that difficulty in calculating restitution would complicate and prolong the sentencing process, the court may decline to order restitution; the MVRA provides:

> **(3)** This section shall not apply in the case of an offense described in paragraph (1)(A)(ii) if the court finds, from facts on the record, that --

**(A)** the number of identifiable victims is so large as to make restitution impracticable; or

**(B)** determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process.

18 U.S.C. § 3663A(c)(3).  The term "victim" means

a person directly and proximately harmed as a result of the commission of an offense as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern. In the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or representative of the victim's estate, another family member, or any other person appointed as suitable by the court, may assume the victim's rights under this section, but in no event shall the defendant be named as such representative or guardian.

18 U.S.C. § 3663A(a)(2).

Section 3664 governs how courts are to issue and enforce restitution awards for the MVRA. <u>See</u> 18 U.S.C. § 3663A(d); 18 U.S.C. § 3556.  Any dispute "as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence" and the "burden of demonstrating the amount of loss sustained by a victim as a result of the offense shall be on the attorney for the Government."  18 U.S.C. § 3664(e).  <u>See</u> <u>United States v. Serawop</u>, 505 F.3d at 1117 (stating that the United States bears the burden of proving amount of loss under the MVRA). The burden of "demonstrating the financial resources of the defendant and the financial needs of the defendant's dependents" is on the defendant.  18 U.S.C. § 3664(e).  "The burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires."  18 U.S.C. § 3664(e).

Section 3664(a) requires that a court order the USPO to include in its presentence report "information sufficient for the court to exercise its discretion in fashioning a restitution order." 18 U.S.C. § 3664(a). If the USPO cannot "reasonably ascertain" "the number or identity of victims" or it is "clearly impracticable" to meet the requirements for other reasons, the USPO must "inform the court." 18 U.S.C. § 3664(a). The United States should provide the USPO a listing of the restitution claims sixty days before sentencing, but § 3664(d)(5) allows a court to "set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing," "if the victim's losses are not ascertainable by the date that is 10 days prior to sentencing." 18 U.S.C. § 3664(d)(5). "If the victim subsequently discovers further losses, the victim shall have 60 days after discovery of those losses in which to petition the court for an amended restitution order." 18 U.S.C. § 3664(d)(5). A court may grant such an order "only upon a showing of good cause for the failure to include such losses in the initial claim for restitutionary relief." 18 U.S.C. § 3664(d)(5).

## ANALYSIS

Pursuant to <u>Dolan v. United States</u>, the Court will grant the Motion in part until December 19, 2018. The Court will determine whether to grant restitution at the hearing scheduled for December 19, 2018. If the Court determines to grant restitution and the United States cannot, at the hearing, produce information on which the Court can determine a restitution amount, at that time, the Court will determine whether to give the United States sixty days to obtain the information. Although the Court will allow this continuation in the present case, the Court will not, as a matter of course, make restitution determinations outside the ninety days following sentencing.

In Dolan v. United States, the Supreme Court held "that a sentencing court that misses the ninety-day deadline nonetheless retains the power to order restitution -- at least where, as here, the sentencing court made clear prior to the deadline's expiration that it would order restitution, leaving open (for more than 90 days) only the amount."[5] 560 U.S. at 608. This holding addresses

---

[5] Dolan v. United States was a five to four decision. The Honorable Stephen G. Breyer, Associate Justice of the Supreme Court, wrote the majority opinion, which the Honorable Clarence Thomas, Associate Justice of the Supreme Court; the Honorable Ruth Bader Ginsburg, Associate Justice of the Supreme Court; the Honorable Samuel A. Alito, Jr., Associate Justice of the Supreme Court; and the Honorable Sonia Sotomayor, Associate Justice of the Supreme Court, joined. The Honorable John G. Roberts, Jr., Chief Justice of the Supreme Court wrote the dissent, which the Honorable John Paul Stevens, then-Associate Justice of the Supreme Court; the Honorable Antonin Scalia, then-Associate Justice of the Supreme Court; and the Honorable Anthony McLeod Kennedy, then-Associate Justice of the Supreme Court, joined. In the dissent, Chief Justice Roberts complains: "Under the Court's view, failing to meet the 90-day deadline has no consequence whatever. The Court reads the statute as if it said 'the court shall set a date for the final determination of the victim's losses, *at any time* after sentencing.'" Dolan v. United States, 560 U.S. at 621 (Robert, C.J., dissenting)(emphasis in original). The dissent would hold that a sentencing court has no authority to order the restitution amount more than ninety days after sentencing. 560 U.S. at 629. Chief Justice Roberts reasons that a sentencing court orders most penalties at sentencing and that "[w]hen Congress permits courts to impose criminal penalties at some time *other* than sentencing, it does so explicitly." 560 U.S. at 622 (Robert, C.J., dissenting)(emphasis in original). Additionally, according to Chief Justice Roberts, a sentencing court has little authority to modify a sentence after imposing it. 560 U.S. at 622-23 (Robert, C.J., dissenting). "Section 3664(d)(5) is a limited exception to these bedrock rules." 560 U.S. at 623 (Robert, C.J., dissenting). Chief Justice Roberts argues: "This provision is meaningful precisely because restitution must otherwise be ordered at sentencing, and because sentences are otherwise final unless properly corrected. If trial courts had power to amend their sentences at any time, § 3664(d)(5) would be unnecessary." 560 U.S. at 623 (Robert, C.J., dissenting).

The Court agrees with the dissent. On a clean slate, the Court would not determine a restitution amount more than ninety days after sentencing. "Not to exceed ninety days after sentencing" means no later than ninety days after sentencing. 18 U.S.C. § 3664(d)(5). The statute does not permit a sentencing court to make a restitution determination outside the ninety-day window. The statute's effect is plain on its face. "Section 3664(d)(5) is self-executing: It grants authority subject to a deadline, and if the deadline is not met, the authority is no longer available." 560 U.S. at 624 (Robert, C.J., dissenting). Section 3664(d)(5) says nothing about granting restitution outside the ninety days; there is no "free pass to impose restitution whenever the trial court gets around to it." 560 U.S. at 624 (Robert, C.J., dissenting).

the consequences of a district court missing 18 U.S.C. § 3664(d)(5)'s ninety-day deadline. 560 U.S. at 607. This holding establishes that a district court has authority to determine a restitution amount after 18 U.S.C. § 3664(d)(5)'s ninety-day deadline when the district court proceeds in two steps: (i) within the ninety-day deadline, the district court must "make clear" that it will order restitution, and (ii) the district court may then decide the restitution amount after the ninety-day deadline.[6] 560 U.S. at 608. The Supreme Court noted: "The fact that a sentencing court misses the statute's 90-day deadline, even through its own fault or that of the Government, does not deprive the court of the power to order restitution." 560 U.S. at 611. The Supreme Court emphasizes that the statute's purpose is to ensure that victims "receive full restitution." 560 U.S. at 612. See 560 U.S. at 612-14. See also Federal Criminal Restitution § 3:2 ("[T]he Court emphasized the victim-favorable purpose and intent of the restitution statutes."). "[T]o read the statute as depriving the sentencing court of the power to order restitution would harm those -- the victims of crime -- who likely bear no responsibility for the deadline's being missed and whom the statute also seeks to benefit." 560 U.S. at 613-14. The Supreme Court admits that, in some circumstances, delaying the restitution determination may "cause the defendant prejudice," and a

---

[6]According to the Federal Criminal Restitution treatise:

The Dolan opinion sweeps more broadly than most of the underlying case law in that its holding is not qualified with respect to whether the defendant waived or tolled the additional delay, or whether the defendant could show prejudice. The sentencing court's authority lasts beyond the 90-days for imposing restitution, regardless of these factors.

Federal Criminal Restitution § 10:22 (footnote and citations omitted).

defendant may request a restitution determination within the ninety-day deadline or seek mandamus should the district court refuse a timely hearing.  560 U.S. at 616-17.

Under <u>Dolan v. United States</u>, when a case's facts match those in <u>Dolan v. United States</u>, i.e., when the sentencing court specifies before the ninety-day deadline that it will grant restitution, that the court misses the ninety-day deadline does not mean that the court loses authority to grant restitution.[7]  <u>See</u>, <u>e.g.</u>, <u>United States v. Muzio</u>, 757 F.3d 1243, 1246 (11th Cir. 2014); <u>United States v. Fu Sheng Kuo</u>, 620 F.3d 1158, 1162-63 (9th Cir. 2010); <u>United States v. Qurashi</u>, 634 F.3d 699, 705 (2d Cir. 2011); <u>United States v. Pinto</u>, No. 3:12-CR-101 (SRU), 2016 WL 308771, at *2 (D. Conn. Jan. 25, 2016)(Underhill, J.), <u>aff'd</u>, 675 F. App'x 64 (2d Cir. 2017); <u>United States v. Termini</u>, No. 3:09-CR-245 (SRU), 2016 WL 199398, at *2 (D. Conn. Jan. 15, 2016)(Underhill, J.),

---

[7]<u>Dolan v. United States</u> does not make the ninety-day requirement in some way optional but, rather, the Supreme Court engages in an end-run around the statute by holding that ignoring the deadline has no consequences.  The Supreme Court removes any teeth from the requirement, but it does not state that a court should ignore § 3664(d)(5); the Supreme Court addresses the sentencing court's "jurisdiction" to grant restitution after the ninety-day deadline.  <u>Dolan v. United States</u>, 560 U.S. at 610 (addressing § 3664(d)(5) deadline's expiration and stating that "[t]he expiration of a 'jurisdictional' deadline prevents the court from permitting or taking the action to which the statute attached the deadline").  <u>See United States v. Pelletier</u>, No. 1:06-CR-00058-JAW-01, 2017 WL 5162800, at *9 (D. Me. Nov. 7, 2017)(Woodcock, Jr., J.)("The Supreme Court concluded that the ninety-day deadline represented a legally-enforceable, time-related directive but was not a 'jurisdictional' deadline that deprives the sentencing court of the power to specify the restitution amount.").  The Supreme Court distinguishes between a statutory obligation -- the ninety-day deadline -- and the consequences of missing the obligation -- whether a court has the authority or "jurisdiction" to enter a valid restitution requirement after the ninety-days.  <u>United States v. Dolan</u>, 571 F.3d 1022, 1035 (10th Cir. 2009)("Dolan argues that the 90-day deadline set by § 3664(d)(5) is jurisdictional.  Put differently, he thinks the district court's power to enter <i>any</i> restitution order expired 90 days after his sentencing on July 30, 2007." (emphasis in original)), <u>aff'd</u>, 560 U.S. 605 (2010)  <u>See</u> 560 U.S. at 615-16.  <u>See also</u> <u>Baquera v. Longshore</u>, 948 F. Supp. 2d 1258, 1264 (D. Colo. 2013)(Moore, J.)(describing <u>Dolan v. United States</u> as about sanctions).  The Supreme Court in <u>Dolan v. United States</u> specifies that it addresses "the remedy for missing a statutory deadline," 560 U.S. at 607; it did not address whether the statutory deadline is obligatory.  "[T]he question before us concerns the consequences of the missed deadline where, as here, the statute does not specify them."  <u>Dolan v. United States</u>, 560 U.S. at 610.

appeal dismissed (March 25, 2016), aff'd sub nom. United States v. Dalicandro, 711 F. App'x 38 (2d Cir. 2017); United States v. Rakhamimov, No. WDQ-13-0662, 2015 WL 6739579, at *8 (D. Md. Nov. 2, 2015)(Quarles, J.); United States v. Belcher, No. CRIM. 13-48-GFVT, 2015 WL 2166794, at *4 (E.D. Ky. May 7, 2015)(Van Tatenhove, J.); United States v. Chipps, No. CR 11-50067-RAL, 2013 WL 4852254, at *4 (D.S.D. Sept. 6, 2013)(Lance, J.); United States v. Mustafa, No. CR 14-261 (JRT/BRT), 2018 WL 1050402, at *3 (D. Minn. Feb. 26, 2018)(Tunheim, C.J.). See also United States v. Dalicandro, 711 F. App'x 38, 41 (2d Cir. 2017)("The Supreme Court held that a sentencing court that misses the 90-day deadline nonetheless retains the power to order restitution, at least if (as here) the sentencing court made clear prior to the deadline's expiration that restitution would be ordered, leaving open (for more than 90 days) only the amount."); United States v. Pileggi, 703 F.3d 675, 682 (4th Cir. 2013)("In Dolan, the Court held that a district court retained the power to order restitution, even after expiration of the 90-day post-sentencing period, when it had made clear prior to the deadline that it intended to impose restitution."). Several Courts of Appeals have discussed entering restitution orders after ninety days as permissible following Dolan v. United States. See, e.g., United States v. Muzio, 757 F.3d at 1246 ("[B]efore Dolan, the district court necessarily lost the power to order restitution ninety days after the defendant was initially sentenced; after Dolan, the district court could delay indefinitely."); Federal Criminal Restitution § 10:22 ("The courts have applied Dolan to generally uphold delays in imposing restitution.").

In Dolan, the Supreme Court of the United States held that restitution orders entered beyond the 90-day period prescribed by 18 U.S.C. § 3664(d)(5) are permissible, at least when 'the sentencing court made clear prior to the deadline's expiration that it would order restitution, leaving open (for more than 90 days) only the amount.' [560 U.S. at 608].

United States v. Fu Sheng Kuo, 620 F.3d at 1162-63.  The Second Circuit has reasoned:

> Here, the district court made clear at sentencing that it would order restitution, and therefore retained the power to do so.  The Supreme Court further provided that, "in the unlikely instances where that delay does cause the defendant prejudice -- perhaps by depriving him of evidence to rebut the claimed restitution amount -- the defendant remains free to ask the court to take that fact into account upon review."  [Dolan v. United States, 560 U.S. at 617.]  Although Qurashi argues that he was prejudiced by the delay, we find no evidence of prejudice and therefore conclude that the district court properly asserted its authority to award restitution.

United States v. Qurashi, 634 F.3d at 705.  Similarly, many district courts have read Dolan v. United States to permit them to enter restitution after the ninety-day period.  See, e.g., United States v. Pinto, 2016 WL 308771, at *2 ("Dolan clearly applies to this case, where only the amount of restitution was left open at the time of Pinto's sentencing, Pinto himself was responsible for considerable delays in determining that amount, and where an inability to grant restitution would only harm the victims of Pinto's illegal scheme."); United States v. Termini, 2016 WL 199398, at *2 (concluding that a district court can enter restitution after the ninety-day period, and noting, "as the Supreme Court noted in Dolan, defendants who face potential prejudice from a delay can alert the court, or, in an extreme case, seek mandamus, 560 U.S. at 616-17, and the defendants did neither in this case."); United States v. Rakhamimov, 2015 WL 6739579, at *8 ("As part of the sentence, the Court ordered restitution in an amount to be determined.  Because the Court ordered restitution, and only left open the amount, the Court may still order restitution against R. Ykiew despite exceeding the 90-day deadline."  (internal quotation marks and citations to case documents omitted)).

> [U]nder Dolan v. United States, . . . the sentencing court retains some flexibility in situations such as this where the Court must make a final determination about victims' losses, and in such cases the Court may still order restitution after the MVRA 90-day deadline when it makes clear before that date that it intends to order restitution in the future.

United States v. Belcher, 2015 WL 2166794, at *4.  See United States v. Chipps, 2013 WL 4852254, at *4 ("Here, while the delay between Chipps's sentencing and a final determination of his restitution obligations is much longer than 90 days, this Court still possesses the ability to 'essentially fill in an amount-related blank' in Chipps's judgment that made clear restitution would be ordered" (quoting Dolan v. United States, 560 U.S. at 620).).

> This 90-day time limit is not a limit on the Court's power to order restitution, even if the delay was the fault of the court or the government. *Dolan v. United States*, 560 U.S. 605, 611 (2010); *United States v. Zaic*, 744 F.3d 1040, 1043 (8th Cir. 2014).  And if a defendant is "on notice the court would order restitution," a district court that orders restitution after the 90-day deadline has passed does not abuse its discretion.  *United States v. Thunderhawk*, 860 F.3d 633, 636 (8th Cir. 2017).

United States v. Mustafa, 2018 WL 1050402, at *3.  See Alexander J. Sisemore, Straying from the Written Path: How the Supreme Court Eviscerated the Plain Meaning of the Mvra's Ninety-Day Deadline Provision and Legislated from the Bench in Dolan v. United States, 64 Okla. L. Rev. 211, 227 (2012)(describing Dolan v. United States as deleting a "provision from the MVRA and replac[ing] it with its own judicially created provision").

The Court, however, concludes that it should not, as a matter of course, make restitution amount determinations more than ninety days after sentencing.[8]  Even a close reading of Dolan v.

---

[8]Because most defendants now plea rather than proceed to trial, many arguments fought between the United States and defendants in the courts involve sentencing, which includes restitution.  These arguments before the courts are the debates that the courts and legal academics see.  The issue of timing for restitution amount determinations, however, is largely academic.  Many, if not most, defendants do not pay restitution -- or, at least, the full restitution amount.  They do not have the economic resources to do so.  Because most defendants plea, many arguments between the United States and defense attorneys that reach the courts involve sentencing and restitution.  See Restitution, The National Center for Victims of Crime, http://victimsofcrime.org/help-for-crime-victims/get-help-bulletins-for-crime-victims/restitution#collect (last visited Dec. 17, 2018)("Collection of restitution is often limited by

United States suggests that courts should not routinely ignore the ninety-day deadline. The Supreme Court indicates that it addresses whether "shall" "bar[s] judges (or other officials) from taking the action to which a missed statutory deadline refers," but it does not appear to address whether "shall" means that the 18 U.S.C. § 3664(d)(5) is not obligatory. Dolan v. United States 560 U.S. at 611-12 (quoting 18 U.S.C. § 3664(d)(5)). Instead, the Supreme Court seems to approve of the approach it took in United States v. Montalvo-Murillo, 496 U.S. 711, 718-19 (1990), which the Supreme Court explains in a parenthetical: "[U]se of word 'shall' in context of bail hearing makes duty 'mandatory' but does not mean that the 'sanction for breach' is 'loss of all later powers to act.'" United States v. Dolan, 560 U.S. at 612. The Supreme Court describes 18 U.S.C. § 3664(d)(5) as a directive that "seeks speed by creating a time-related directive that is legally enforceable but does not deprive a judge or other public official of the power to take the action to which the deadline applies if the deadline is missed." 560 U.S. at 611. The majority, further, noted in dicta that it assumed that a court would take "statutorily required action" and would not deliberately ignore "the statute":

> [T]he defendant normally can mitigate any harm that a missed deadline might cause -- at least if, as here, he obtains the relevant information regarding the restitution amount before the 90-day deadline expires. A defendant who fears the deadline will be (or just has been) missed can simply tell the court, which will then likely set a timely hearing or take other statutorily required action. See § 3664(d)(4) (providing that "court may require additional documentation or hear testimony"); § 3664(d)(5). Though a deliberate failure of the sentencing court to comply with the statute seems improbable, should that occur, the defendant can also seek mandamus. See All Writs Act, 28 U.S.C. § 1651(a); *La Buy v. Howes Leather Co.,* 352 U.S. 249 . . . (1957). Cf. *Brock* [v. Pierce Cty., 476 U.S. 253,] at 260, n.7,

---

the offender's ability to pay. As a result, many victims wait years before they receive any restitution, and they may never receive the full amount of restitution ordered.")

[(1986)] (noting availability of district court action to compel agency compliance with time-related directive).

560 U.S. at 615-16.[9]

Some district court have recognized that <u>Dolan v. United States</u> left in place some form of a ninety-day requirement. <u>See</u>, <u>United States v. Sobczynski</u>, No. 09-20233, 2013 WL 625739, at *2 (E.D. Mich. Feb. 20, 2013)(Roberts, J.)("The Supreme Court held that the time limit in the statute is considered to be a procedural requirement, and violating this procedural requirement does not prevent the Court from exercising jurisdiction." (citing <u>Dolan v. United States</u>, 560 U.S. at 611)). <u>See also</u> <u>United States v. Rakhamimov</u>, No. WDQ-13-0662, 2015 WL 6739579, at *8 (D. Md. Nov. 2, 2015)(Quarles, Jr., J.)("The ninety-day time limit 'seeks speed by creating a time-

---

[9]The Tenth Circuit noted likewise in its decision, and the dicta from the Supreme Court quoted in the text follow the Tenth Circuit's line of thinking:

> While we today decide the 90-day deadline is not a jurisdictional limit on the district court's authority to order restitution, our holding should *not* be misconstrued as suggesting the government has the discretion to seek, and the district court has discretion to enter, restitution on any time schedule they find convenient. The law remains that the district court *shall* enter a restitution order within 90 days. And this directive serves important congressionally identified purposes -- to ensure victims timely compensation and to prevent the potential dissipation of defendants' assets. District courts and the government must take steps to ensure compliance with the MVRA's deadline and the public interests it serves, just as they must with any other congressional command. Though district courts do not lose the authority to enter restitution after 90 days, the law remains the law and courts and the government alike are bound to follow it. As the Supreme Court explained in *Montalvo-Murillo,* though "the sanction for breach is not loss of all later powers to act," the duty remains a "mandatory" one. 495 U.S. at 718 . . . . Failure to abide Congress's instruction still "represent[s] a default on a statutory duty." *Barnhart* [v. Peabody Coal Co.], 537 U.S. [149, ] 157 [2003].

United States v. Dolan, 571 F.3d at 1031 (emphasis in original)(footnote omitted). The Tenth Circuit similarly explained: "[D]istrict courts *must* order restitution by the deadline, but even if they are late they cannot avoid the restitution obligation." <u>United States v. Dolan</u>, 571 F.3d at 1028 (emphasis in original).

related directive that is legally enforceable but does not deprive a [district court] . . . of the power to take the action'" (quoting Dolan v. United States, 560 U.S. at 611)). The District of Colorado noted, in discussing Dolan v. United States and United States v. Montalvo-Murillo, that the cases focused on sanctions and not on statutory obligations:

> Neither statute contained language suggesting an outcome in the event that the court failed to discharge its obligations in a timely manner. In other words, the statutes contained directives surrounded by relative silence as to the consequence should the deadline not be met. Faced with this, both the Supreme Court and the Tenth Circuit were reluctant to create a coercive sanction, especially one which penalized the public by causing the loss of a valuable right created by Congress -- the right to have dangerous criminals detained in the case of the Bail Reform Act and the right to restitution under the Mandatory Victims Restitution Act. *See Montalvo-Murillo* at 716-20 . . . ; *Dolan* at 1027-28.

Baquera v. Longshore, 948 F. Supp. 2d at 1264 (footnote omitted).

Admittedly, in practical terms, Dolan v. United States' holding that § 3664(d)(5) does not limit a court's authority to determine restitution differs little from a holding that § 3664(d)(5) does not impose a directive on sentencing courts, because Dolan v. United States' holding allows sentencing courts to ignore § 3664(d)(5). See Dolan v. United States, 560 U.S. at 621 (Robert, C.J., dissenting)("The Court reads the statute as if it said 'the court shall set a date for the final determination of the victim's losses, *at any time* after sentencing'"(emphasis in original).). That something can be done without consequences does not mean that something should be done regardless instructions to the contrary. Section 3664(d)(5) still directs a court to have a restitution hearing within ninety days of sentencing, see 18 U.S.C. § 3664(d)(5), and Dolan v. United States did not address the existence of the directive itself. Moreover, § 3664(d) does not contemplate that a sentencing court should routinely allow restitution determinations after sentencing as a matter of course. Section 3664(d)(5) allows the determinations to be postponed only when "the

victim's losses are not ascertainable by the date that is 10 days prior to sentencing," and "the attorney for the Government or the probation officer . . . so inform[s] the court." 18 U.S.C. § 3664(d)(5).

Here, the case aligns with <u>Dolan v. United States</u>' facts, and the Court will follow the two-step process from <u>Dolan v. United States</u>. The parties here have suggested a plausible interpretation of <u>Dolan v. United States</u>, <u>see</u> Restitution, 6 Crim. Proc. § 26.6(c) (4th ed.)("Presently under the MVRA, federal courts may delay up to 90 days after sentencing their findings on loss and restitution, and even further delays have been upheld by the Court."), and the United States and the USPO have struggled to obtain from M.D. documentation related to restitution. <u>See</u> Motion at 1. The United States has suggested that some delay in M.D.'s providing the documentation results from the very injury that Sedillo, Sabaquie, and Gallardo inflicted on him -- the PTSD. <u>See</u> Tr. at 8:3-13 (Torrez). "[T]he statute seeks speed primarily to help the victims of crime," and the victim is the one struggling to produce information. <u>Dolan v. United States</u>, 560 U.S. at 613. Sedillo, Sabaquie, and Gallardo likely will suffer no prejudice and have not demanded a restitution-amount determination within the ninety-days; they have known that the United States is looking to bring a restitution claim since their sentencing hearings, at which the Court made clear that it may order restitution if the United States produces evidence to supports such an order. <u>Cf.</u> <u>Dolan v. United States</u>, 560 U.S. at 615-17 (concluding that a court could determine the restitution amount outside ninety days after sentencing when the court stated that it would order restitution within the ninety days, and noting that a defendant could remedy prejudice by demanding a restitution amount determination within the ninety days or by bringing an action for mandamus); <u>United States v. Termini</u>, 2016 WL 199398, at *2 (concluding that a district court

could enter restitution after the ninety-day period when the court ordered within the ninety days that it would order restitution and the defendants neither filed mandamus nor alerted the court to that the defendants would be prejudiced if the court made the restitution amount determination after the ninety days). The Court clarified again at the hearing on December 12, 2018, that it would consider ordering restitution at the upcoming hearing on December 19, 2018, if the United States produces information to support restitution, and at the upcoming hearing, which will occur within the ninety days following the sentencing of all the Defendants, the Court can determine whether to determine the restitution amount at a later date. Dolan v. United States, 560 U.S. at 608. The Court, thus, is within the facts outlined in Dolan v. United States, and the Court has authority to ensure that the victim "receive[s] full restitution," 560 U.S. at 612, even if the Court does so outside the ninety-day deadline. Under these circumstances, the Court will fulfill the statute's "substantive purpose, namely, . . . to ensure that victims of a crime receive full restitution," and at the upcoming hearing on December 19, 2018, order restitution, if the United States produces information for restitution, with an amount to be determined later. Dolan v. United States, 560 U.S. at 612.

The Court will not, as a regular practice, however, determine restitution amounts outside ninety days after sentencing. The United States and the USPO should obtain information for restitution determinations before sentencing, and, if they cannot obtain the information before sentencing, they should have the information within ninety days after sentencing. See 18 U.S.C. § 3664(d)(5). Section 3664(d)(5) directs the Court to make restitution determinations within ninety days after sentencing, and for the Court to do this, it requires information from the United States and the USPO.

**IT IS ORDERED** that: (i) the Motion to Continue the Restitution Hearing, filed December 11, 2018 (Doc. 152), is granted in part and denied in part; (ii) the restitution hearing will be continued until December 19, 2018; (iii) if Plaintiff United States of America, at the December 19, 2018, hearing, shows, by a preponderance of the evidence, that restitution is warranted, the Court will grant restitution; (iv) if the Court determines to grant restitution at the December, 19, 2018, hearing and the United States, at the December 19, 2018, hearing, cannot prove the restitution amount by a preponderance of the evidence, the restitution amount determination will be continued for sixty days; and (v) if the Court does not grant restitution at the December 19, 2018, hearing, the Court will grant no continuance, at least as to Defendant Loren Sabaquie.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*

John C. Anderson
  United States Attorney
Presiliano Torrez
Howard R. Thomas
   Assistant United States Attorneys
District of New Mexico
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Daniel J. Tallon
Daniel J Tallon, Attorney at Law
Placitas, New Mexico

     *Attorney for Defendant Bruce Sedillo*

Alejandro Benito Fernandez
  Assistant Federal Public Defender
Federal Public Defender Organization for the District of New Mexico?
Albuquerque, New Mexico

    *Attorney for Defendant Loren Sabaquie*

Jerry Daniel Herrera
JD Herrera Law Offices
Albuquerque, New Mexico

    *Attorney for Defendant Robert Gallardo*